## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY LEE KING,

             Petitioner,

                                CIVIL NO. 2:12-CV-13778

v.                           HONORABLE SEAN F. COX
                                UNITED STATES DISTRICT COURT

DUNCAN MCLAREN,

             Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Anthony King, ("petitioner"), presently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws, § 750.317; carrying a concealed weapon, Mich. Comp. Laws, § 750.227; felon in possession of a firearm, Mich. Comp. Laws, § 750.224f; possession of a firearm in the commission of a felony, Mich. Comp. Laws, § 750.227b, and being a second felony habitual offender, Mich. Comp. Laws, § 769.11. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

1

## I.  Background

Petitioner was convicted of the above charges following a jury trial in the Genesee County Circuit Court.

On August 22, 2007, Officer Karl Petrich of the Flint Police Department was dispatched at 2:36 a.m. to the 6700 block of Cecil regarding a possible shooting with a man down in the middle of the street.  Upon arrival, Officer Petrich discovered a white male laying face up in the middle of the street without a pulse.  The officer radioed for medical assistance.  There was no one on the scene when he arrived at the location. (Tr. I, pp. 175-77, 193).

Donald Morris testified that on August 21, 2007, he had borrowed a van from Isadore Dean.  Morris drove back from the club with his friend Chris Brownlee when it closed at 2:00 a.m.  Upon arriving back in the neighborhood, he saw petitioner.  Morris stopped to speak with petitioner, who was standing in front of his house.  Petitioner was with a person whom Morris did not know.  Petitioner got into the van that Morris was driving in order to go to the store so that petitioner could buy cigarettes.  After going to the store, Morris intended to drop petitioner off near his house.  Before dropping petitioner off, Morris had seen two white men inside of a truck on Cecil and Jewell.  One man exited the passenger side of the truck and came up to the window of the van.  The man asked to purchase some drugs. Mr. Morris was

on the telephone and "shooed him off." (Tr. I, pp. 261-68). The white man walked towards the other vehicle. At this point, petitioner got out of the van. Morris did not know where he went. As Morris pulled the van away, he heard a gunshot. Morris did not see petitioner with a gun that night. (*Id.,* pp. 272-77).

Christopher Brownlee testified he and Donald Morris borrowed Isadore Dean's van on August 21, 2007 to drive to a nightclub. The men later returned to the neighborhood, where they saw petitioner. Petitioner rode with the men to a gas station to buy cigarettes. After going to the gas station, the three men drove down Cecil, where they were stopped by a white male. The white male walked up to the driver's side of the van. Mr. Brownlee asked the man to "go on." At this point, petitioner exited the van. Mr. Brownlee testified that about a "second" after petitioner got out of the van, he heard a gunshot, although he later testified that it was about forty seconds after petitioner exited the vehicle. Morris and Brownlee drove off when they heard a gunshot. Brownlee could not remember telling Sergeant Angus that he saw petitioner walk up to the white man and ask him what he had. (Tr. II, pp. 89-98, 102-08, 111-12).

Joyce Munerlyn testified that on August 22, 2007, she was at her mother's home on Cecil Drive at about 2:30-3:00 a.m. watching television. Munerlyn heard a gunshot and her sister on the porch screaming that somebody had been shot.

Munerlyn and her sister were standing on the porch when an unidentified man walked by and told them to "go in the house." Munerlyn had known petitioner for about five or six years, but could not say whether the person she saw on the night of the shooting was petitioner or not. (Tr. II, pp. 139-42, 145, 161).

Michelle Gowdy testified she was at her mother's house on Cecil Drive on August 22, 2007, when she heard a gunshot. Gowdy went to the front door of her house and saw a body. A man came over from the vicinity of the body and told them to go into the house. Gowdy did not know who the person was but insisted that it was not petitioner. (Tr. II, pp. 167, 172-74, 183).

Jeremy Eddy testified that he shared a jail cell with petitioner at the Genesee County jail. Mr. Eddy testified that petitioner made admissions to him concerning the murder. Petitioner informed Eddy that he could not be found guilty because "they had no shell casings," because one of his friends picked them up. Petitioner also told Eddy that someone had walked out onto her porch and he had told her to go back inside. Petitioner also informed Eddy that the people who had been on the porch were going to come to court and testify that he didn't do the shooting. Petitioner further advised Eddy that he was with "a few buddies" at the time of the shooting but that the men were not going to come to court to testify. Petitioner also told Eddy that he sold the victim "fake dope" earlier on the evening of the shooting and the men had an

4

argument about it.  Petitioner told Eddy that the gun was a 380 and was hidden at his "daughter's mother's house."  Petitioner informed Eddy that he shot twice.  Mr. Eddy hoped that his testimony would get him "consideration" with regard to a pending criminal charge against him. (Tr. II, pp. 186-190).

Tommy Parker testified that he was in the area of Polly and Cecil on August 22, 2007 at around 2:30-3:00 a.m.   Parker testified that he saw petitioner in the area around 4:00-5:00 a.m.  Parker testified that he did not remember giving Sergeant Angus a statement regarding a homicide. (Tr. Vol. II, p. 215-20).  This conversation with Sergeant Angus was taped.  Parker claimed that anything that he said to Sergeant Angus was while he was high on crack and under the threat of prosecution.  He also claimed that the police promised him money, which he wanted to use to buy more crack. (*Id.*, pp. 240, 248, 255-56).  Parker denied telling Sergeant Angus that he saw Isadore Dean's van on Cecil and Polly early on the morning of August 22, 2007 or that he had seen Donald Morris, Christopher Brownlee, and petitioner in the van. Parker did not recall telling Sergeant Angus that he witnessed petitioner exit the van and walk towards the victim.  Parker did not recall telling Sergeant Angus that the two men argued before petitioner shot the victim in the chest.  Parker did not recall telling Sergeant Angus that the van left the scene.  Parker acknowledged that he probably informed the detective that petitioner walked toward his mother's house.  The

5

videotape of Parker's conversation to Sergeant Angus was played to the jury. (*Id.*, pp. 254-58).

William Lipp testified that on August 22,2007, he gave Gene Marsh a ride to his friend's house.  The friend wasn't home so they drove out of the neighborhood.  As they were leaving the neighborhood Marsh asked Lipp to pull over so he could talk to a man that he knew.  Marsh jumped out of Lipp's vehicle and approached a van.  Lipp observed someone get out of this van and walk towards Mr. Marsh while he was talking to the driver.  They walked to the back of the van.  Mr. Lipp saw a flash and heard a gunshot.  Lipp later indicated that he saw the man place a gun at the victim's chest and shoot him.  Marsh screamed and ran back towards Lipp's vehicle.  (Tr. III, pp. 21-26).

Sergeant Michael Angus was the officer in charge of this case. (Tr. III, p. 70).  Sergeant Angus did not know the names of the people involved in the case until he had spoken with Tommy Parker. (*Id.*, p. 73).  Sergeant Angus interviewed Isadore Dean, who told him that Mr. Brownlee and Mr. Morris had talked to him about the murder.  That interview was videotaped and played for the jury. (*Id.,* pp. 75-76).  Chris Brownlee told Sergeant Angus that petitioner had shot an innocent man.  Brownlee indicated that petitioner walked up to the victim and asked, "what you got?"  Brownlee heard petitioner state "give it me" before hearing a gunshot.  The videotape

6

of Brownlee's interview was played to the jury. (*Id.,* pp. 83, 93).

Petitioner testified that he went to his mother's house on August 22, 2007, because he and his girlfriend has been involved in a "physical argument." While standing outside of his mother's house, Donald Morris and Christopher Brownlee drove by in a conversion van. Petitioner asked the men for a ride to the gas station, where petitioner bought cigarettes and a cigar. Morris and Brownlee were taking petitioner home when they saw a truck that flashed its lights because its driver wanted them to stop. The van stopped and a white male exited the truck and walked to the driver's side of the van. While they were talking to the white male, petitioner decided to get out and walk to his mother's house which was only 12-13 steps away. After entering his mother's home, petitioner heard a gunshot. Petitioner's mother ran out of the kitchen and asked him if he heard the shot. Petitioner denied discussing the facts of his case with Mr. Eddy. Petitioner noted that Eddy had access to the legal documents from his case. Petitioner denied telling Eddy that he shot anyone. Once petitioner heard that he was a suspect in this case he went to the police station and turned himself in (Tr. III, pp. 225-37).

Petitioner's conviction was affirmed on appeal. *People v. King*, No. 285490 (Mich.Ct.App. October 15, 2009); *lv. den*. 485 Mich. 1128 (2010).

Petitioner then filed a post-conviction motion for relief from judgment with the

7

trial court, which was denied. *People v. King*, No. 08-22025-FC (Genesee County Cir. Ct., January 11, 2011).   The Michigan appellate courts denied petitioner leave to appeal. *People v. King*, No. 303361 (Mich. Ct. App. October 4, 2011); *lv. den.* 491 Mich. 941 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied the effective assistance of trial counsel.

II. Petitioner was denied his right to due process by the state court's admission into evidence of a video of alleged prior inconsistent statements.

III. There was insufficient evidence to support conviction.

IV. Petitioner was denied due process by the trial court's admission of irrelevant, gruesome photographs of the murder victim's internal organs.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

8

Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7

9

(1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.  Discussion

### A.  Claim # 1.  The ineffective assistance of counsel claim.

Petitioner first claims that his trial counsel was ineffective for failing to call his girlfriend and his mother as alibi witnesses.  As a related claim, petitioner further claims that trial counsel was ineffective for failing to request an instruction on the defense of alibi.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the

10

circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's*

11

standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S.

Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

The Michigan Court of Appeals rejected petitioner's claim:

The record does not support defendant's argument that Monica McBride was an alibi witness. Her proposed testimony did not indicate that defendant was with her when the victim was shot. [1] By her latest estimation, defendant left her aunt's house at 2:20 a.m. The police were dispatched at 2:36 a.m. The aunt's house was only four or five blocks from the scene of the shooting, a distance that defendant could have traveled to be present at the time of the shooting. Moreover, two prosecution witnesses and defendant himself testified that defendant was in the van that was connected to the shooting just before the shooting occurred.

Defendant testified that he was in his mother's house when he heard a gunshot, and Leanna Morris testified in defendant's offer of proof that she saw defendant in her kitchen just after hearing the gunshot. Thus, Morris's testimony could have provided defendant with an alibi. However, defense counsel asserted at trial that he was not presenting an alibi defense, and argued instead that defendant could not have been the shooter because the evidence showed that the shooter had to be significantly taller than defendant. Also, there was testimony that other people were present near the scene of the shooting. Considering the testimony of other witnesses, and defendant's own testimony, which established his presence in the area near the time of the shooting, it was not objectively unreasonable for defense counsel to instead focus on the physical characteristics of the shooter and the presence of other

---

[1] The proposed testimony of the two witnesses, Monica McBride and Leanna Morris, was presented in an offer of proof outside the jury's presence. (Footnote original).

13

individuals in the area to argue that defendant was not the shooter, rather then attempt to present a weaker alibi defense. Indeed, the other occupants of the van testified that seconds separated defendant's exit from the van and the gunshot. Although defendant's mother's house was nearby, he still would have had to cross the backyard, unlock the door, and enter the kitchen before the shot was fired in order for an alibi defense to be effective. Under the circumstances, the failure to file a notice of alibi did not deprive defendant of a substantial defense.

*People v. King,* Slip. Op. at * 2-3.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted). The failure to present a proposed alibi witness who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. *Id.*

In the present case, trial counsel was not ineffective for failing to call either petitioner's girlfriend or his mother as alibi witnesses. Petitioner's girlfriend testified during the offer of proof that petitioner left her house at 2:20 a.m. The evidence established that the police were dispatched to the shooting around 2:36 a.m. Petitioner himself admitted to being inside of the van that was connected to the murder just prior to the shooting. Because petitioner's girlfriend could not provide an alibi for the particular time of the crime, counsel was not ineffective for failing to call her as an alibi witnesses. *See Wolfe v. Bock,* 253 Fed. Appx. 526, 531 (6th Cir.

14

2007).

Petitioner is also unable to establish that counsel was ineffective for failing to call his mother as an alibi witness. The eyewitnesses testified that only seconds elapsed between petitioner's exit from the van and the gunshot. Although petitioner's mother lived nearby, he would have still had to cross the backyard, unlock the door to the house, and enter the kitchen before the gunshot was fired for an alibi defense to have been effective. Because there was a window of opportunity for petitioner to have committed this murder on the night in question, petitioner was not prejudiced by counsel's failure to present an alibi defense. *See e.g. Fargo v. Phillips,* 58 F. Appx. 603, 607-08 (6th Cir. 2003). Moreover, in light of the fact that petitioner's mother was a family member, counsel could have reasonably concluded that she would not have been a credible alibi witness. *See Stadler v. Berghuis,* 483 F. Appx. 173, 176-77 (6th Cir. 2012).

Because none of petitioner's proposed witnesses could have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005).

Finally, In light of the substantial evidence of petitioner's guilt, including his own admissions to a fellow cellmate, petitioner was not prejudiced by counsel's failure to present an alibi defense. *See Bray v. Cason,* 375 Fed. Appx. 466, 470-71

15

(6th Cir. 2010).

Because counsel's decision to forego an alibi defense in this case was reasonable, counsel was not ineffective for failing to request an instruction on the alibi defense. Petitioner is not entitled to habeas relief on his first claim.

### B. Claims # 2 and # 4. The evidentiary law claims.

The Court will discuss petitioner's second and fourth claims together because they both involve evidentiary law claims.

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). Thus, "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In his second claim, petitioner contends that the trial court abused its discretion in admitting into evidence the videotaped statements of three prosecution witnesses, claiming that they were irrelevant, more prejudicial than probative, and were used as

substantive evidence rather than to merely impeach the credibility of these witnesses.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Moreover, the use of a witness' prior inconsistent statement as substantive evidence, and not merely for impeachment purposes, is not an error of constitutional dimension. *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970). Therefore, any claim involving the improper admission of the witnesses' prior inconsistent statements is not cognizable in a federal habeas corpus proceeding. *See e.g., Bolton v. Nelson,* 426 F. 2d 807, 809 (9th Cir. 1970)(whether procedure followed by state court in permitting use of prior inconsistent statement was in violation of state decisional rule was not matter for federal district court to decide, on petition for habeas corpus); *see also Roland v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983)(alleged misapplication of state law in impeachment by prosecutor of petitioner's accomplice with prior inconsistent statements was not cognizable in federal habeas corpus proceedings). Finally, any possible use of these witnesses' prior inconsistent statements by the prosecutor as substantive evidence did not render petitioner's trial fundamentally unfair, in light of

the trial court's instruction to the jury that the prior inconsistent statements could only be used for impeachment purposes and not to prove the truth of the matter asserted. (Tr. IV, p. 59). *See Christopherson v. Boone,* 49 Fed. Appx. 257, 261-62 (10th Cir. 2002). Petitioner is not entitled to habeas relief on his second claim.

In his fourth claim, petitioner claims that the trial court erred in admitting into evidence photographs from the autopsy showing the victim's organs.

Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g., Franklin v. Bradshaw,* 695 F. 3d 439, 456-57 (6th Cir. 2012); *cert. den. sub nom Franklin v. Robinson,* 133 S. Ct. 1724 (2013); *Cooey v. Coyle,* 289 F. 3d 882, 893-94 (6th Cir. 2002).  Petitioner is not entitled to habeas relief on his fourth claim.

### C.  Claim # 3.  The sufficiency of evidence claim.

Petitioner lastly contends that there was insufficient evidence to establish his identity as the shooter.

The Michigan Court of Appeals rejected petitioner's claim:

> In this case, multiple witnesses testified that defendant was in the van until shortly before the gunshot was fired, and that he was the only person to exit the van.  Another witness testified that the person who exited the van shot the victim.  Although this witness did not see a gun, he saw the shooter point something at the victim, which was followed by a bang and a flash, resulting in the victim being shot.  Viewed in a light most favorable to the prosecution, the evidence was sufficient to

18

> enable the jury to find beyond a reasonable doubt that defendant was the person who exited the van, and that he possessed a firearm that he used to shoot the victim.

*King,* Slip. Op. at * 5.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively

unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).        Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

     In the present case, there was strong circumstantial evidence which linked the petitioner to the crime. Donald Morris and Christopher Brownlee testified that they heard the gunshot that killed the victim only seconds after petitioner exited the van. William Lipp testified that he observed a man exit the van before seeing the man point something at the victim's chest before seeing a flash and hearing a bang.

20

Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). This circumstantial evidence was sufficient to establish petitioner's identity as the shooter.

In addition to this evidence, petitioner's cellmate Jeremy Eddy testified that petitioner admitted to shooting the victim. "[A]n admission by the accused identifying himself as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F. 2d 490, 494 (8th Cir. 1979); *see also Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008)(evidence sufficient to establish petitioner's identity as armed robber where his admissions placed him at the location of the crime). Petitioner's admission of guilt was sufficient evidence to establish his guilt as the murderer.

To the extent that Petitioner challenges the credibility of the prosecution witnesses, he would not be entitled to relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).

An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Any insufficiency of evidence claim that rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his third claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it

22

2:12-cv-13778-SFC-MKM   Doc # 17   Filed 09/19/13   Pg 23 of 24   Pg ID 1676

enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

Dated:  September 19, 2013                                    S/ Sean F. Cox
                                                             Sean F. Cox
                                                             U. S. District Court Judge


I hereby certify that on September 19, 2013, the foregoing document was served upon counsel of record by electronic means and upon Anthony King by First Class Mail

at the address below:

Anthony King #512785
Kinross Correctional Facility
16770 S. Watertower Drive
Kincheloe, MI 49788

Dated:  September 19, 2013                                S/ J. McCoy
                                                         Case Manager